# THURMAN HARGER v. STATE.

No. A-6916.   Opinion Filed September 28, 1929.
(281 Pac. 154.)

J. G. Harley and E. E. Ammons, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted of the crime of having in his possession intoxicating liquor, to wit, whisky, with the unlawful and wrongful intent on the part of him, the said defendant, of bartering, selling, and otherwise unlawfully disposing of the same, and his punishment fixed at confinement in the county jail for 30 days, and a fine of $50, from which judgment and sentence the defendant has appealed.

The state in support of the allegations in the information introduced Sambo Manahawee, who testified in substance that he went to the home of the defendant, on the 20th of July, 1927; when he got there the defendant was not at home; he was northeast of the house in a field; "I met him down in the field coming toward the house; I went back in the direction he came from, following his tracks, which led to the edge of the timber, and

went out in the timber some distance and found where some whisky had been buried; I believe there were two gallons; I did not find any still on the place; when I first saw the defendant, he was coming through a cotton patch; this whisky was found in the timber more than a quarter of a mile from the defendant's home on a portion of the same place, and adjoining the land defendant had rented and was cultivating; the timber was down next to the river; I did not see the defendant in possession of this whisky; the only thing we saw were the tracks of the defendant out in the cotton patch going toward the timber and coming back through the cotton patch; it looked like the whisky had just been buried."

Haga Thompson, called as a witness, testified in substance to the same facts as did Sambo Manahawee. Neither of the witnesses for the state testified to seeing the defendant in possession of the whisky.

The state offered testimony as to the things found about the defendant's house, but after the testimony was offered the court excluded all the testimony with reference to what the officers saw or found at the defendant's home.

Robert Parker testified in behalf of the defendant that he cultivated a part of the Sam Thompson farm, being the same farm that the defendant was cultivating a part of; that on the day it is alleged the defendant violated the law he went down to defendant's home and was there a few minutes before the officers came and the defendant was not at home at the time; shortly after the officers came, he saw the defendant coming through his cotton patch. The wife of Robert Parker testified in substance to the same facts as did her husband.

The defendant in his own behalf testified that the place where the officers claim they found whisky was down

in the timber on a part of the Sam Thompson place, which was a part of the same farm this defendant was cultivating a number of acres, but he had no control over the timber land down on the river; that they had had some high waters and the fencing had been washed away, and Thompson had started to rebuild the fence; he denied having possession of any whisky, and had not made any whisky. He stated that prior to the time the officers came to the house he was plowing cotton in the field and his mules got scared and ran away; that he had followed them to where they stopped and had taken the mules loose from the cultivator and driven them to the house, and at the time the officers came he had been down to where the cultivator was to see if he could fix it so he could use it.

There is no testimony in the record showing this defendant at any time had possession of the whisky the officers claim to have found in the timber; his tracks found by the officers, which they claim they followed near where they found the whisky in the timber, amount to a mere suspicion that the defendant may have been guilty. The defendant in this case is charged with the possession of whisky with the unlawful and wrongful intent to sell, give away, and otherwise furnish to others. The proof wholly fails to sustain this charge.

In cases of this kind the intent to violate the prohibitory law being the gist of the offense, before a conviction can be sustained, the state must allege and prove beyond a reasonable doubt, not only that the defendant had possession of the intoxicating liquor, but also of the unlawful intent to violate the provisions of the liquor laws. If the state had sufficient testimony to show the defendant had possession of the whisky found, the quantity of

whisky found would be prima facie evidence of the intent to sell; but there is no testimony showing that the defendant had possession of the whisky found.

Upon a careful consideration of the record, we are of the opinion that it would be destroying the presumption that arises in favor of the accused, and permitting a subversion which establishes a rule of guilt beyond a reasonable doubt, to allow this conviction to stand. Because the evidence is insufficient to support the verdict, the judgment of the lower court is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.